UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GARY CURRIE, SR.,

      Plaintiff,

v.                                        Case No. 05-C-355

PAPER CONVERTING MACHINE COMPANY,

      Defendant.

**DECISION AND ORDER**

This case arises out of the closure of a division of the Paper Converting Machine Company known as the O&E Machine Division. Gary Currie, Sr., who states that his maternal grandmother was a Native American, operated a planer mill at the O&E plant; his job title was "Planer Miller / 5." Prior to becoming a planer miller, he had worked in assembly and machining jobs at the plant. In April 2001, the O&E plant closed and laid off the bulk of its 129 employees, including Currie. Currie's claim in this case is that when the plant closed, the defendant violated 42 U.S.C. § 1981 when it failed to transfer him to another of its facilities, known as Renard. He also claims that when he later applied for a job at Renard, the defendant's failure to hire him violated § 1981.

The defendant did transfer some employees to Renard after the O&E plant closed. Gerry Hickey, the plant manager, was in charge of deciding which workers would be transferred. In consultation with the UAW, which represented Renard workers, Hickey selected 18 workers to be transferred, and they became UAW members upon assuming duties at Renard. (Hickey Aff., ¶¶ 11-12.) Hickey states that the transfers were made based on the kind of work to be done at the Renard plant. Only certain kinds of work was transferred to Renard, and thus only certain positions would

be transferred as well, such as cam cell or label laminating work. (Hickey Aff., ¶ 13.) No planer mill jobs were transferred.

Soon after the plant closed, Currie submitted an application at Renard for a job as a machinist or in assembly. He also applied again some two years later. In neither instance did he get an interview.

## ANALYSIS

To succeed on a race discrimination claim under § 1981, a plaintiff must first set out a *prima facie* case of discrimination. *Hague v. Thompson Distribution Co.,* 436 F.3d 816, 820 (7th Cir. 2006). In establishing a *prima facie* case in a situation like this, a plaintiff must show that he was qualified for a position, but passed over in favor of similarly situated non-minority employees or applicants. If the plaintiff can provide some evidence of those factors, then the employer is allowed to state a legitimate, nondiscriminatory explanation for the employment action. The plaintiff can then attempt to show that the employer's stated reason is phony, i.e., a pretext for the real, impermissible, reason for the adverse employment action.

**1. *Prima Facie* Case**

The plaintiff cannot make out his *prima facie* case. Although the defendant addresses two of the *prima facie* case's prongs, it might make more sense to follow the Seventh Circuit's approach in *Radue v. v. Kimberly-Clark Corp.,* 219 F.3d 612, 617-18 (7th Cir. 2000), another failure-to-transfer case arising out of the RIF context. There, the defendant conceded the first three parts of the *prima facie* case and focused on the fact that the plaintiff was not similarly situated to others who were treated more favorably. Because this analysis subsumes the defendant's argument that the plaintiff was not qualified for the positions that were transferred, the analysis is largely identical.

2

When there is a RIF and a plaintiff alleges he should have been retained in lieu of others, the *prima facie* case requires him to show that he was similarly situated to those who were offered transfers. The *Radue* court addressed this prong at some length:

> In determining whether two employees are similarly situated a court must look at all relevant factors, the number of which depends on the context of the case. *Spath v. Hayes Wheels Int'l-In., Inc.*, 211 F.3d 392, 397 (7th Cir.2000). . . . In a failure to transfer case some of these factors-like the severity of the infractions-are not relevant, although the same general comparisons must be made. As to the relevant factors, an employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998). Without making an exhaustive list, we note that in previous RIF cases plaintiffs were required to show at a minimum that *the retained or transferred younger employees possessed analogous attributes, experience, education, and qualifications relevant to the positions sought,* and that the younger employees obtained the desired positions around the same time as the RIF.

219 F.3d at 617-18 (italics added). Thus, to make out a *prima facie* case, Currie must show that the white employees who were transferred or hired possessed analogous attributes, experience and qualifications. This he cannot do.

The plaintiff has no evidence that he was similarly situated to any of the individuals to whom he compares himself, company employees named Elliott, Bahrke, Evrard, McGarry, Malchak, Giesbers, Richardson, and Rosenberg, all of whom who were either transferred to Renard or hired later. He also compares himself to Michael Ropson, who had no experience with the company and was hired in 2003. First, it is clear that none of the jobs hired at Renard were planer jobs, which was the position at O&E the plaintiff had held for the past several years. Currie has presented evidence in the form of an affidavit of a co-worker and one-time supervisor at O&E named Bernard Stelmach, but Stelmach had little insight into the qualifications that would be relevant to the new positions at Renard.

3

Stelmach opines that Currie was qualified to do assembly work and was qualified as a machinist–both jobs he had previously done at O&E. (Stelmach Aff., ¶¶ 5-9.) Taking Stelmach's opinions in the light most favorable to Currie, they still do not establish that Currie was similarly situated to anyone who received a transfer to Renard. Stelmach establishes, for example, that Currie had more experience in some jobs than some transferred employees, but less than others. For instance, Stelmach opines that "Richardson had more experience as a lathe operator than Currie, the position Richardson obtained [at Renard], but Currie's overall experience made him the better candidate." (Stelmach Aff., ¶ 18.) He also states that "[l]ike Richardson, Rosenberg had more lathe experience than Currie, the position he was hired into, but the same reasons that make Currie a better candidate than Richardson apply to Rosenberg." (*Id.,* ¶ 19.) The same is true for Stelmach's other comparisons of employees: in each instance he opines that Currie was better qualified for various reasons (most of them based on Currie's general experience), but the differences he seizes on establish that Currie either performed different jobs than the transferred employees or had performed similar work seven or more years earlier. This is not sufficient to establish that the transferred white employees had "possessed analogous attributes, experience, education, and qualifications relevant to the positions sought." *Radue,* 219 F.3d at 618.

In sum, accepting the fact that Currie was basically a good employee for decades while he worked at O&E, that does not show that he was similarly situated to, or better qualified than, the employees who were actually transferred. "Radue contends that Kimberly-Clark provided [the compared employee] with an electrical engineering position. But Radue can't show a meaningful similarity to Proctor because Proctor is an electrical engineer, while Radue is not. The fact that Proctor was qualified for the position he obtained, while Radue isn't, means that there is insufficient similarity to infer discrimination." *Id.*

**2. Pretext**

Even if Currie could establish a *prima facie* case, it is clear that the best his evidence shows is that he and his one-time supervisor disagree with some personnel moves that company decision-makers made. The disagreements are limited to averments that Currie was somewhat more qualified than others, but the differences in qualifications, even accepted at face value, are not sufficient to establish that the employer's reasons for not transferring or hiring him are unworthy of credence. Currie has submitted as supplemental authority the Supreme Court's recent decision in *Ash v. Tyson Foods, Inc.,* 126 S.Ct. 1195 (2006), in which the Court frowned upon the Eleventh Circuit's formulation for determining when qualifications evidence could establish pretext. The Eleventh Circuit had used a framework whereby to show pretext a plaintiff's superior qualifications had to be "so apparent as virtually to jump off the page and slap you in the face." *Id.* at 1197 (quoting *Cooper v. Southern Co.,* 390 F.3d 695, 732 (11th Cir. 2004)). The Supreme Court did not reject the substance of the test, however, but merely its imprecision: "The visual image of words jumping off the page to slap you (presumably a court) in the face is unhelpful and imprecise as an elaboration of the standard for inferring pretext from superior qualifications." *Id.* Instead, it expressed preference for other, less graphic, formulations of the test, such as the one also set forth in *Cooper, supra:* "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Id.*

Here, there is no inkling that Currie's qualifications were obviously superior to others'. At best the evidence shows he was a good employee, and in particular that his former supervisor thought he was a good employee. But one presumes that most of the more than one-hundred other laid-off O&E employees could establish as much. Most importantly, however, the company did

5

not hire any jobs in the position Currie held with it at the time. It would be one thing if it had hired planers who had less experience than Currie, which would be suspicious. But that did not happen here. There is simply nothing about the qualifications of those the company hired or transferred that make them dramatically less qualified than Currie. It is often repeated that federal courts are not super-personnel departments, and the reason is that neither courts nor juries are well-equipped or qualified to sit in judgment over the numerous factors that go into employment decisions such as occurred in this case. *See, e.g., Cardoso v. Robert Bosch Corp.,* 427 F.3d 429, 435-36 (7th Cir. 2005). Thus, when the plaintiff says we should not believe the employer because his qualifications are superior, there has to be something about his qualifications that really stands out above and beyond his say-so, such that "no reasonable person" would have failed to hire the plaintiff in lieu of the other employees. *Ash,* 126 S. Ct. at 1197. That is not the case here. *Cardoso,* 427 F.3d at 436. "Cardoso's evidence of pretext is nothing more than his disagreement with the way in which Bosch evaluated his skills, qualifications, and worth . . . . This will not do. Cardoso's belief that he is better qualified for a higher salary is irrelevant to the question of pretext."

Finally, even if Currie were obviously better qualified, there is no indication that any of the decision makers knew that fact. The bulk of his argument is based on Stelmach's affidavit, but Stelmach was not even working for the company at the time the plant shut down. Thus, Currie has not successfully linked any of Stelmach's subjective judgments about Currie's skills to the knowledge or hiring process of the company's decision makers. Nor is there any evidence that any of the decision makers themselves had any independent reasons to judge Currie a better candidate for any of the open positions. Although Hickey was familiar with Currie's performance as a planer miller, there is no evidence Hickey should have been intimately familiar with any other qualifications Currie possessed. The same is true for those who decided to hire Ropson for a jig

6

bar or boring bar position at Renard in 2003. Ropson had never worked for the company, and the primary decision maker, Tim Bouressa, states that Ropson made the cut because he listed jig bar experience on his application, whereas Currie did not. Currie does not dispute this, but merely claims that Ropson actually ended up working on a boring bar, not a jig bar. He does not indicate, however, how this is relevant to Bouressa's determination that Ropson was better qualified. At best, once again, Currie shows that he might have been qualified for a boring bar position due to his general background in machining, but this does not establish that no reasonable person could have made the employment decision Bouressa did. He also avers that Bouressa (himself a Native American) is simply lying to cover up the company's animus against Native Americans, but such a conclusory (and illogical) assertion is not sufficient to show pretext.[1]

Accordingly, for the reasons given above, the defendant's motion for summary judgment is GRANTED and this case is DISMISSED.

SO ORDERED this __22nd__ day of April, 2006.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

[1] In addition, there is scant evidence that Currie is Native American or that any of the decision makers knew Currie was a Native American. To establish a claim under 42 U.S.C. § 1981, Currie must prove that his race "actually motivated the employer's decision." *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000) ("To establish a claim ... a plaintiff-employee must show that the protected trait ... actually motivated the employer's decision ...")) But because Currie cannot establish his *prima facie* case or pretext, that issue need not be addressed.

7